## Commonwealth ex rel. v. Armour & Co.

*Charles J. Solit*, for Commonwealth.

*William N. J. McGinniss*, of *Foulkrod, Sheppard, Porter & Alexander*, for defendant.

SMITH, P. J., August 25, 1937.—This case arises from an appeal from the judgment of Magistrate Dogole, in a summary proceeding, adjudging defendant Armour & Company guilty (and fining it $10 and costs) of selling a commodity marked with a false weight, under the Act of July 24, 1913, P. L. 965, sec. 5, which is as follows:

"It shall be unlawful for any person, firm or corporation, with intent to defraud:

"(1). To sell, or offer for sale, any commodity on the container of which is marked any false statement respecting the kind, number, quantity, weight, or measure of such commodity, or of any part thereof, or respecting the place or country where such commodity was manufactured or produced, or respecting the quality or grade of such commodity."

In Commonwealth v. Benson et al., 94 Pa. Superior Ct. 10, 14, Keller, J., commenting on appeals from summary convictions, said:

". . . if an appeal is asked for, this is directed to the Court of *Quarter Sessions* and, if allowed, the case is heard de novo before a judge of that court. In such case, the Court of Quarter Sessions does not sustain or reverse the judgment of the inferior magistrate—it does not review such judgment or the matters alleged as ground for appeal—it finds the defendant either guilty or not guilty —it either convicts or acquits him. . . . The judgment on writs of *certiorari* from a summary conviction before an alderman or justice of the peace is to (1) sustain or (2) set aside the judgment; on *appeals* from such conviction the judgment is (1) guilty or (2) not guilty; (1)

conviction or (2) acquittal. It has been our practice, if the judgment of the Court of Quarter Sessions is not in substantial accordance with this well settled practice, to send the record back that a proper judgment in accordance with said practice may be entered: Com. v. Congdon, 74 Pa. Superior Ct. 286. We do not hold that any set form of judgment must be used: Com. v. Gipner, 118 Pa. 379; but the record must show a hearing by the court to which the appeal is taken and a definitive judgment by that court upon the facts and the law applicable to those facts, and not a mere review of the proceedings before the magistrate."

Accordingly, the case was heard de novo before Smith, P. J., without a jury, in the court of quarter sessions on January 29, 1937.

James J. Stevenson, an inspector for the Bureau of Weights and Measures in Philadelphia, testified that his bureau received complaints from Edward Rosner and Joseph Greisler, both of Philadelphia, regarding shipments of meat from defendant company, and that he therefore was present when a shipment of meat was made to them by defendant company; that the first shipment was 1 pound 10 ounces under net, out of a total of 56 pounds, and that the second was 1 pound 2 ounces short. He testified that often the scale weight of the meat in the boxes is within a few ounces of the boxed weight.

Edward Rosner testified that he has been a butcher dealing with defendant company for the past 18 years and has purchased an average of $20,000 per year worth of merchandise from defendant company during that time; that for many years he has been buying these pork loins which are packed in the West in ventilated crates, which crates are marked with the gross and tare weights, and that he is billed for the net weight marked on the crate. He testified that he is familiar with the fact that there is a natural shrinkage in fresh meats due to evaporation; that the fat on a hog does not evaporate but that it is the moisture in the meat which evaporates,

causing a loss of weight. He further testified that when the shipment is short a pound or two, and he complains, sometimes the driver takes it off, and sometimes he has to call up the branch house and the shipper takes it off, and some of them do not give him any credit.

The invoice, which defendant company sends to its customers, including complainants, for every such purchase of meat, contains the following heading:

"We guarantee to the purchaser of the articles of food described in this invoice that the same are not adulterated or misbranded within the meaning of the Federal Food and Drug Act of June 30, 1906, as amended, nor the laws of the State to which we ship the same.

"Package goods are sold at weight when packed: No allowance made for natural shrinkage."

It is the contention of the Bureau of Weights and Measures that the marking on the box itself is misleading, in that section 7 of the Act of 1913, supra, provides:

"If in package form, the quantity of the contents shall be plainly and conspicuously marked on the outside of the package in terms of weight, measure, or numerical count: Provided, however, That reasonable variations shall be permitted; and tolerances and also exemptions as to small packages shall be established by rules and regulations made by the Chief of the Pennsylvania Bureau of Standards."

The Bureau of Weight and Measures also contends that the Bureau of Standards sets up no tolerances, and that therefore, if there is a shrinkage at all, for any reason whatsoever, it is a shortage under the Act of 1913.

Defendant contends, on the other hand, that the meat is packed in Chicago, Ill., at the packing house, right after the slaughtering and then is shipped to various points in the United States, including Philadelphia, and sold in the unopened package to the retailer on the basis of the weight made when packed in Chicago, that any loss of weight under the net weight as marked is due to natural shrinkage in the meat; that the retailers are familiar with this

condition and practice, and if they desire to buy the meat at scale weight, instead of the boxed weight, 2 cents per pound more is charged therefor; and that this is purely a transaction between wholesaler and retailer and not within the contemplation of the penalty of the statute, and in fact is exempted specifically by the Act of June 7, 1915, P. L. 886, sec. 1, which amends the Act of July 24, 1913, supra, sec. 10.

Section 10 of the Act of 1913 provides:

"This act shall go into effect the first day of January, one thousand nine hundred and fourteen: Provided, however, That no penalty shall be enforced for any violation of its provisions as to domestic products prepared, or foreign products imported, prior to eighteen months after its passage".

Section 1, of the Act of 1915, amended section 10 of the Act of 1913 by adding the words:

". . . and further, that this act shall not apply to the marking of the net quantity of the contents on containers or packages handled, sold, or offered for sale by wholesalers, jobbers or commission merchants."

It is conceded that defendant is a wholesaler and that complainant Rosner is a retailer who sells to the consumer. From a reading of the Act of 1913 and its amendment of 1915 it becomes quite clear that by the specific exception of "wholesalers, jobbers or commission merchants" from the provisions therein the acts are not intended to apply to transactions between defendant company and its retailer customers, such as Rosner, complainant, is.

Rosner, complainant-retailer, testified that he has been doing business with defendant company for 18 years and is acquainted with the fact that fresh meat naturally evaporates, and that he buys the unopened crates which are shipped from the West, and that the net weight of the boxed meat is not as much as that marked on the crates, due to the natural evaporation. The invoice for the meat plainly states that "Package goods are sold at weight when packed", and that "no allowance [is] made for natural

shrinkage." The retailer has the option of buying such meat at scale weight for 2 cents per pound more if he does not desire to abide by the practice of paying for the boxed meat at the marked weight. The parties made their own contract, and the evidence negatives any intent to defraud such as is contemplated by section 5 of the Act of 1913.

The case of City of New York v. Sulzberger & Sons Co., 80 Misc. 660, 141 N. Y. Supp. 876, was an action for violation of an ordinance charging defendant for offering for sale and delivery in Brooklyn, N. Y., 62 pounds of pork one pound short. The ordinance provided:

"No person shall sell or offer for sale any commodity or article of merchandise in any market or in the public streets or in any other place in the city of New York, at or for a greater weight or measure than the true measure or weight thereof; and all . . . meats . . . sold in the streets or elsewhere in the city of New York, shall be weighed or measured by scales, measures or balances, or in measures duly tested, sealed and marked by the commissioner of weights and measures or an inspector of weights and measures of the said city."

From the facts it appears that the defendant Sulzberger & Sons Company was engaged in the business of selling meats, wholesale, in Brooklyn, and sold one box of pork loins, containing four pork loins, each separately wrapped, for which the buyer was charged 62 pounds, whereas the actual and true weight of the meat was 61 pounds. There was a pound of paper and 61 pounds of meat, inclosed in a box weighing seven pounds. The gross weight, and so marked on the box, was 69 pounds, and the net weight at which these goods were charged and billed to complainant was 62 pounds. These pork loins were prepared at the packing houses of defendant corporation at Kansas City, Mo., and were packed at such place under the supervision and inspection of the Federal authorities, as provided by the Act of Congress of June 30, 1906, 34 Stat. at L. 669, which is the so-called "Meat

Inspection Statute". Under the provisions or regulations adopted by the United States Department of Agriculture these pork loins when packed at Kansas City were inspected by the United States Food Inspector, and the labels, as required by the regulations, were attached to the cover, showing that they were passed and inspected, and, being so examined and passed and inspected and complying with the requirement of the United States Meat Inspection Law, and being in the original package, they were an article of interstate commerce. They were received in the original package in Brooklyn and sold, without being opened, to complainant. Defendant Sulzberger & Sons Company was a wholesale concern, dealing in meats exclusively at wholesale, and complainant was a retailer, but did not buy meat for his own consumption. The stipulation of facts also set forth, at page 663:

"This was a wholesale transaction, the same as previously had between the purchaser and the seller in the ordinary course of their business. At the time of the purchase, a bill and invoice were delivered to and received by the purchaser before he paid for the goods, as a part of the transaction constituting the purchase of such goods. The said bill of lading, after the figures describing the gross and net weights and tare, has at the bottom a printed legend which among other things states: 'If goods are not satisfactory report at once; otherwise no reclamation will be allowed. Package goods charged for at weight when packed. No allowance made for natural shrinkage. *Wrapped meats sold gross weight*.'

"In the transportation of the goods in question from Kansas City to the borough of Brooklyn, there is and necessarily would be a certain amount of shrinkage and evaporation in the loins, the meat in question; and the paper wrappers on these pork loins, between the time of packing and the time of sale, absorb and take to themselves part of the grease, fat and moisture of the pork loins."

The court held:

"This is a highly penal ordinance and must be construed strictly and not extended by implication.

"The transactions involved in this case are not by express terms within the ordinance, nor are they reasonably within the ordinance by implication. Here we have a large wholesale business selling to a retailer goods packed in Kansas City. The goods are first inspected by the United States government inspector, wrapped and tagged and when shipped cannot be withdrawn from the box and again shipped in part. A bill of lading which is a part of the transaction of purchase distinctly states that *'wrapped meats are sold gross weight.'* Thus both parties have, without fraud or deception on the part of either, made a contract of sale of a box of pork tenderloins by gross weight. That they have a right to do so cannot be questioned. Concededly, between the time of packing and time of sale, there is a certain amount of shrinkage and evaporation of the meats in question, with resultant small loss of weight. This was not the kind of a transaction which the ordinance was designed to prevent. Here the parties are daily dealing with the same commodities and presumably familiar with their business. . . .

"If the ordinance has the meaning contended for by counsel for the city, the defendant could not with safety sell any goods in boxes. If the packer weighed the goods at Kansas City, put the true net weight and true gross weight on the box then shipped to New York, he could not with safety undertake to sell the goods so shipped without first unpacking the box, removing the wrapper and reweighing. This involves considerable rehandling and frustrates the sanitary purpose of one original handling and wrapping.

"If the city intended to accomplish such result by the passage of the ordinance, it should be clearly and unequivocally stated in the ordinance itself."

Judge Kapper, of the same court, in that opinion concurred in the judgment for defendant "on the ground that the ordinance does not expressly nor by implication reach

a sale by a producer or packer to a middleman or dealer, but is limited to sales to consumers."

The facts in the Sulzberger case are strikingly similar to those in the instant case. In the instant case, the pork loins were packed at Chicago, Ill.; the weight markings were placed on the crate there; the loins were shipped to defendant company in Philadelphia, and by it sold to the retailer in the same unopened crate at the boxed weight with "no allowance made for natural shrinkage", according to the invoice furnished the retailer; and, lastly, this was a transaction solely between wholesaler and retailer. No evidence was offered by the Commonwealth that the weight as marked on the crate was not correct when packed, and therefore there was no burden on defendant to offer evidence in this regard, and it may rely on its presumption of innocence.

We are, therefore, of the opinion that the Commonwealth has failed to prove defendant guilty of violating the Act of July 24, 1913, P. L. 965, as amended by the Act of June 7, 1915, P. L. 886, and that defendant should be acquitted.

### Order

And now, to wit, August 25, 1937, pursuant to the opinion in this case, the court finds defendant Armour & Company not guilty of violating the Act of July 24, 1913, P. L. 965, as amended.